[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 1, 2006
THOMAS  K. KAHN
CLERK

No. 05-13859
Non-Argument Calendar

_____

D. C. Docket No. 04-01637-CV-TWT-1

OLIN USHER, JR.,

                                                    Petitioner-Appellant,

versus

CALVIN MORTIN,

                                                    Respondent-Appellee,

JAMES E. DONALD,

                                                    Intervenor-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 1, 2006)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Olin Usher, Jr., a Georgia prisoner proceeding pro se, appeals the district court's denial of his federal habeas petition, brought pursuant to 28 U.S.C. § 2254. The certificate of appealability ("COA") in the present appeal concerns only Usher's claim that his all-white jury array violated his Sixth Amendment right to a jury representing a fair cross-section of the community. The district court rejected this claim as procedurally defaulted, because the state court refused to consider the claim after Usher's counsel failed to object in a timely manner at trial. Construing Usher's pro se brief liberally, he argues on appeal that the district court erred in its procedural default ruling, and that his attorney was ineffective, creating cause and prejudice sufficient to overcome the procedural default. We affirm the district court.

The issue of whether a habeas petitioner's claims are subject to the doctrine of procedural default is a mixed question of law and fact that we review de novo. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).[1] We analyze this issue according to the following rule:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless

---

[1] Although the COA is silent on the matter of procedural default, we may still reach the issue. *See McCoy v. United States*, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001).

2

the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Peoples v. Campbell*, 377 F.3d 1208, 1234-35 (11th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 2963, 162 L. Ed. 2d 892 (2005).[2]

We apply a three-part test to determine whether a state court's procedural ruling is independent and adequate:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state rule must be adequate, *i.e.*, it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

*Judd*, 250 F.3d at 1313 (internal quotes and citations omitted). Here, the Georgia Court of Appeals expressly determined that Usher had failed to preserve his constitutional claim, because he did not present his challenge to the jury array in

---

[2] A fundamental miscarriage of justice is actual innocence. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986); *Dretke v. Haley*, 541 U.S. 386, 393-94, 124 S. Ct. 1847, 1852, 158 L. Ed. 2d 659 (2004). Although Usher uses the phrase "fundamental miscarriage of justice" on several occasions, he does not appear to claim actual innocence.

writing and prior to the commencement of *voir dire*, as required by Georgia law. *See Usher v. State*, 574 S.E.2d 580, 584 (Ga. Ct. App. 2002).[3] Although the state court added that "even if [Usher's claim] was properly preserved, it is meritless," *id.*, this does not foreclose reliance on a procedural bar. *See Marek v. Singletary*, 62 F.3d 1295, 1301-02 (11th Cir. 1995) ("When a state court addresses both the independent state procedural ground and the merits of the federal constitutional claim, the federal [habeas] court should apply the state procedural bar and decline to reach the merits of the claim."). As for the next prong, the state court's procedural decision rested solidly on state law, and was not intertwined with federal law. Finally, Usher does not argue–and we do not find–that the state court applied Georgia law in an arbitrary or unprecedented fashion. The record indicates that Usher's counsel did not lodge even an oral objection to the jury array until after the jury was sworn. The trial judge indicated that the attorney could supplement the objection in writing later on, but he filed no such supplement. As Usher's challenge was neither timely nor placed in writing, the state appellate court's application of Georgia law was not arbitrary or unprecedented. *See*

---

[3] Georgia law requires that, "to avoid waiving any right to challenge the composition of a traverse jury on appeal, a defendant must raise such a challenge prior to the commencement of *voir dire*." *Spencer v. Kemp*, 781 F.2d 1458, 1464 (11th Cir. 1986) (en banc). The challenge must be in writing. *See* O.C.G.A. § 15-12-162.

4

*Spencer*, 781 F.2d at 1464; O.C.G.A § 15-12-262.[4]  Usher defaulted his claim in

state court pursuant to an independent and adequate state procedural rule.

To show cause to overcome this procedural default, Usher argues that the

default was due to ineffective assistance of trial counsel.  In order to establish that

counsel's performance is cause sufficient to overcome a default, the performance

must be constitutionally deficient under the standard set forth in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *See*

*Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002).  Under *Strickland*, a

defendant must show that (1) his counsel's performance was deficient in that

counsel made errors so serious that he was not functioning as the "counsel"

guaranteed by the Sixth Amendment, and (2) there is a reasonable probability that

_____

[4] It is uncontroverted that a written challenge to Usher's jury array first appeared in his amended motion for a new trial.  On direct appeal, Usher's appellate counsel pointed out that Georgia courts have sometimes permitted a defendant to object orally and later present the objection in writing, in a motion for a new trial.  *See, e.g.*, *Anthony v. State*, 444 S.E.2d 393 (Ga. Ct. App. 1994).  As the State pointed out in response, however, *Anthony* involved a jury array with a disproportional number of college students, and the defendant would not have been aware of this fact until after *voir dire*.  *See id.* at 394-95.  Thus, it would have been unfair to expect him to raise the issue prior to *voir dire*.  *See id.* at 396.  In the instant case, the State explained, Usher's trial counsel was able to discern the race of the members of the jury panel when they were brought into the courtroom, but made no oral objection until the day after *voir dire* had been conducted and the jury had been selected, seated, and sworn.  Nor did the attorney follow up with a written supplement.  Thus, Usher was not deprived of a fair opportunity to raise his objection in a timely fashion.  *See Anthony*, 444 S.E.2d at 395 ("[A] challenge to the array is not waived as long as it is raised at the earliest opportunity to do so, and . . . *if* the defendant has no fair opportunity to put his challenge in writing at that time, he may do so for the first time in a motion for a new trial.") (emphasis added).  Usher does not demonstrate that this rule, which we have considered "rooted in sound policy," *see Spencer*, 781 F.2d at 1465, is fundamentally unfair.

the outcome would have been different, but for counsel's unprofessional errors. *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068.

First of all, it does not appear that Usher properly raised an ineffective assistance of counsel claim, either on direct appeal or in state habeas proceedings, that was based on his counsel's failure to make a timely objection to the jury array. This in itself constitutes a distinct procedural default for which Usher has shown neither cause nor prejudice. *See Chambers v. Thompson*, 150 F.3d 1324, 1325-27 (11th Cir. 1998); O.C.G.A § 9-14-51. Thus, Usher cannot rely upon a similar claim of ineffective assistance to establish cause for the procedural default at issue in this appeal: the untimely objection to the jury array. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself.").

Even if Usher did properly raise the appropriate ineffective assistance claim, he has still failed to show cause for the procedural default at issue. Usher has not adequately explained how his trial counsel's failure to object in a timely fashion, and provide a written supplement, was "so ineffective as to violate the Federal

6

Constitution," *Edwards*, 529 U.S. at 451, 120 S. Ct. at 1591, because the objection Usher desired ultimately lacked merit. *Cf. Brownlee*, 306 F.3d at 1066 ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."). Usher's Sixth Amendment right was to "the presence of a fair cross-section of the community on venire panels, or lists from which grand and petit juries are drawn." *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005).[5] To demonstrate a prima facie violation of this right, Usher must prove:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Henderson*, 409 F.3d at 1305. Here, Usher would not have succeeded, because (1) he concedes that the 1990 census numbers were the proper benchmark for applying the fair cross-section requirement, (2) the uncontroverted record evidence is that the percentage of black persons on the applicable traverse jury list (7.4%) reflected the percentage of black persons (18 years and older) in Rockdale county in 1990

---

[5] Thus, while "petit juries must be drawn from a source fairly representative of the community," there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702, 42 L. Ed. 2d 690 (1975). Under *Taylor*, "the jury wheels, pools of names, panels, or venires from which the juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.*

(7.37%), within a margin of .03%, and (3) Usher does not identify, and we do not find, any record evidence that black persons were systematically excluded during the process in which jurors were drawn from the traverse jury list to serve on Usher's jury array. *See Berryhill v. Zant*, 858 F.2d 633, 638 (11th Cir. 1988) (petitioner must show that group in question was "systematically excluded from the jury source") .

Where a petitioner fails to show cause to overcome a procedural default, we need not go on to determine whether there is prejudice. *See McCleskey v. Zant*, 499 U.S. 467, 494-495, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). For the reasons stated above, Usher has not shown cause for his procedural default, nor has he raised a colorable claim that there was a fundamental miscarriage of justice.[6] Accordingly, the district court did not err in dismissing Usher's habeas petition, and we affirm.

**AFFIRMED.**

---

[6] Usher argues that he is entitled to relief under *Johnson v. California*, __ U.S. __, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005) and *Miller-El v. Dretke*, __ U.S. __, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005). Unlike Usher's case, however, *Miller-El* and *Johnson* involved allegations that prosecutors had intentionally used peremptory strikes to exclude potential jurors based on their race.